**SOFT DRINK INDUSTRY LOCAL UNION NO. 744 PENSION FUND, Plaintiff,**

v.

**COCA–COLA BOTTLING CO. OF CHICAGO, Defendant.**

No. 87 C 4178.

United States District Court, N.D. Illinois, E.D.

Jan. 15, 1988.

Stephen Feinberg, Michael C. Greenfield, Barry Collins, Asher, Pavalon, Gittler & Greenfield, Ltd., Chicago, Ill., for plaintiff.

James C. Franczek, Jr., Lawrence L. Summers, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

### MEMORANDUM OPINION

GRADY, Chief Judge.

This Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"), case comes before the court on the motion of plaintiff and counter-defendant Soft Drink Industry Local Union No. 744 Pension Fund ("the Fund") to dismiss the counterclaim of defendant and counter-plaintiff Coca–Cola Bottling Co. of Chicago ("Coke") for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion to dismiss is denied.

FACTS

Coke entered into a collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 744 ("the union"). Section 36.2 of this agreement detailed certain contributions which Coke would make to the Fund for every employee who worked eleven or more days per month. The Fund is a multi-employer pension plan administered under ERISA. In § 36.2, Coke agreed to pay the Fund the lesser of $104.54 "or a sum equal to what is actuarially determined to provide an improvement in the benefit level of no more than" $100 per month for future retirees.

The agreement took effect July 21, 1985. Answer at ¶ 9. The Fund alleges that it calculated Coke's necessary contribution to be $104.54 per month per covered employee, Complaint at ¶ 10, although Coke denies this. Answer at ¶ 10. Coke paid this amount from July 21, 1985 through January 1987. *Id.* at ¶ 11. Then Coke stopped making these payments to the Fund, *id.* at ¶ 12, and the Fund sued.

Coke answered and counterclaimed on June 26, 1987. Its answer alleged that it does not have an obligation to make further payments. Coke also argues that this court lacks subject matter jurisdiction over an ERISA claim brought by the Fund, and that the case should be dismissed for failure to join the Fund Trustees and the Union. Rule 12(b)(7). In its counterclaim Coke alleges that its earlier payments were made by mistake and requests that the Fund be ordered to return these allegedly erroneous payments.

DISCUSSION

*Subject Matter Jurisdiction*

■ Coke's answer suggests that this court lacks subject matter jurisdiction. A claim asserting a right allegedly created by a federal statute presents a federal question. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (test of federal jurisdiction is not whether cause

of action was one on which complainant could actually recover but rather whether it involves a federal controversy); *see also Oneida Indian Nation of New York v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974) (federal jurisdiction unless right claimed is patently specious). As the complaint purports to assert a right under ERISA, we have subject matter jurisdiction over this case. 28 U.S.C. § 1331.

### Motion to Dismiss Counterclaim

The crux of this motion to dismiss is the meaning and the implications of the phrase "shall not prohibit" in § 403(c) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii) (hereinafter "the refund section"). The refund section is one of a few narrow exceptions to the general ERISA rule that

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(c)(1).

Stripped of exceptions irrelevant to this motion, the refund section states that a payment

> made by an employer to a multiemployer plan by a mistake of fact or law ... shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A)(ii). Coke argues that the refund section gives it a private right of action to attempt to compel the return of erroneous payments. In the alternative, Coke argues that federal common law allows it to state a claim for return of mistaken contributions to a multiemployer pension plan.

The Fund's motion to dismiss for failure to state a claim raises close and complicated questions that are still largely unsettled in this circuit. The courts in other circuits which have considered these questions are divided into three camps. Some hold that there is no right of action, some that there is an implied private right of action, and some that there is a federal common law right of action. We believe this last view to be the correct one.

### Does the Refund Section Create an Implied Right of Action for Employers?

We begin by examining what guidance is available from the two cases in this circuit which seem to be most relevant, *Martin v. Hamil,* 608 F.2d 725 (7th Cir.1979) and *Bosco v. Serhant,* 836 F.2d 271 (7th Cir. 1987).

*Martin* was a declaratory judgment action brought by the trustees of a pension fund which was subject to ERISA. The trustees sought and received a declaratory judgment that a particular employer was not entitled to repayment of monies which the employer claimed were paid due to a type of mistake then outside the scope of the refund section. 608 F.2d at 727–28. (The then-applicable version of the repayment section allowed repayments for errors of fact but not for errors of law. *Id.* at 728.[1]) The Seventh Circuit held that the employers had committed no mistake of fact, only one of law, but stated that "defendants are entitled to restitution for ... contributions under ERISA only if they paid contributions as a result of a mistake of fact." *Id.* at 728–29. This statement is dictum because, as we have just noted, the court found that no mistake of fact occurred. In context, it clearly means only that not having made a mistake of fact, defendants are not entitled to restitution.

Coke nonetheless argues that the Seventh Circuit's statement in *Martin* "implicitly has recognized a cause of action for restitution of excess contributions under

---

1. As originally enacted, the refund section stated:

> In the case of a contribution which is made by an employer by mistake of fact, paragraph [29 U.S.C. § 1103(c)] (1) shall not prohibit

the return of such contribution to the employer within one year after the payment of the contribution.

29 U.S.C. § 1103(c)(2)(A) (1976) (amended in 1980).

ERISA." Memorandum in Opposition to Plaintiff Motion to Dismiss Counterclaim at 4. Even if the Seventh Circuit's statement were not dictum, it alone could not support Coke's contention. *Martin* was a declaratory judgment action by a pension fund trustee. Pension fund trustees are one of the parties to whom ERISA explicitly grants the right to bring suits. 29 U.S.C. A. § 1132(a). Employers are not among the parties explicitly granted such a right. *See id.* Coke's contention that a cause of action for restitution exists under ERISA requires that we imply a cause of action under the act. In order to do this we must undertake the analysis required by *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), and its successors. The Seventh Circuit was not required to undertake this analysis in *Martin,* nor did it even allude to the issue, and it is therefore clear that *Martin* has not resolved whether an employer has an implied cause of action under ERISA for restitution of allegedly mistaken overpayments.

■ We turn therefore to *Bosco,* the most recent Seventh Circuit case concerning implied rights of action under comprehensive federal statutes. *Bosco* concerned portions of the Commodity Exchange Act, 7 U.S.C. §§ 7a(8), 13c(a). Writing for the panel, Judge Posner expressed some skepticism about implied rights of action:

> The whole question of "implied" rights of action is deeply vexed. It lies at the crux of a series of debates over statutory interpretation. Those judges who believe that most statutes are compromises between rival interest groups hesitate to create implied rights of action no matter how defective a state's remedial scheme is without them, for they believe that in all likelihood the absence of effective remedies was a part of the compromise that enabled the statute to be passed, and they rightly do not want to undo the compromise. Those who believe that a regulatory statute should be viewed not as the point of balance between conflicting interest groups but as a straightforward effort to eliminate abuses do not

hesitate to enforce a statute by whatever remedies are expedient.

> Some take a different view; they believe that the question is not whether the statute's ostensible purposes would be served by adding a private right of action to the remedies expressly provided, but whether Congress consciously intended (without bothering to say) that there should be a private right of action. The Supreme Court followed this approach in *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353 [102 S.Ct. 1825, 72 L.Ed.2d 182] (1982).... The Court reasoned that ... in 1974 [when the Commodity Exchange Act was passed] ... courts were freely implying rights of action and had even done so in a number of commodities cases, and because Congress must be presumed to know the decisional background against which it amends its statutes, it must have wanted the courts to keep on implying private rights of action in the same class of cases; otherwise it would have told them to stop....

> As an original matter we might question the last two links in this chain.

*Bosco,* at 275. We understand this to mean that we should approach the implication of a private right of action with some caution.

The *Cort v. Ash* test for an implied right of action has four parts:

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted' ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). Cases since *Cort v. Ash* "have

plainly stated that our focus must be on 'the intent of Congress.'" *Curran*, 456 U.S. at 377, 102 S.Ct. at 1839. *See also* Note, *Intent, Clear Statements, and the Common Law: Statutory Interpretation in the Supreme Court*, 95 Harv.L.J. 892, 894–95 (1982) (legislative intent as discerned from literal words of statutes "new touchstone" of statutory interpretation). Indeed, in a federal court's determination of whether to imply a private right of action under a federal statute, an "argument based on tort principles ... is entirely misplaced." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). The same presumably applies for common law equitable principles such as restitution.

The intent of Congress in enacting ERISA is unusually clear. *See* 29 U.S.C. §§ 1001, 1001a, 1001b (congressional findings and declarations of policy). Congress wanted to set up "minimum standards to be provided assuring the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). The methods chosen to do this were to impose duties on employers and on fiduciaries and to create minimum standards of benefits, and other rights, inuring to employees who had justified expectations of being plan beneficiaries. 29 U.S.C. §§ 1001(b), 1001(c). "It is beyond dispute that protection of the financial integrity of multi-employer pension funds is the touchstone of ERISA." *Dumac Forestry Servs., Inc. v. International Broth. of Elec. Workers*, 814 F.2d 79, 83 (2d Cir.1987).

■ This intentionally one-sided purpose of protecting employees and protecting the financial integrity of pension plans suggests that the general command of 29 U.S.C. § 1103(c)(1)[2] must be read liberally. Similarly, it suggests that exceptions to § 1103(c)(1), such as the refund section, should not be given liberal constructions unless the statute clearly commands it, or unless doing so would clearly further the remedial purposes of ERISA.

■ We therefore find the reasoning of the Eleventh Circuit in *Dime Coal Co., Inc. v. Combs*, 796 F.2d 394 (11th Cir.1986) to be the most persuasive on the issue of implied rights of action. Section 502(a) of ERISA, 29 U.S.C. § 1132(a), enumerates who may bring actions under ERISA. The right to bring an action is given to plan participants, beneficiaries, and the Secretary of Labor. Employers are conspicuous by their absence. Further, the refund section, 29 U.S.C. § 1103(c)(2)(A)(ii), appears as an exception to a portion of ERISA dealing with the management of funds, i.e., it follows 29 U.S.C. § 1103(c)(1), not the portion of ERISA which creates rights of action, which is 29 U.S.C. § 1132(a). *See Dime Coal* 796 F.2d at 397–98. There is therefore no textually-based reason to believe that Congress intended the refund section to create a private right of action for employers. *Id.; accord Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 228–233 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 645, 93 L.Ed.2d 701, *and cert. denied sub. nom Central States, Southwest Areas Pension Fund v. Whitworth Bros. Storage Co.*, —— U.S. ——, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *see also Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981) (court should not imply additional private right of action when statute already has "elaborate enforcement mechanism"); Stone, Comment, *A Path of No Return: Employer Overpayments into Employee Benefit Plans*, 8 Indus.Rel.L.J. 68, 88–92 (1986) (no employer private right of action under refund section).

In following *Dime Coal* we differ from the view of the Ninth Circuit as set out in *Award Service, Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Trust Fund*, 763 F.2d 1066 (9th Cir.), *motion to recall man-*

---

**2.** The "assets of a plan shall *never* inure to the benefit of any employer and shall be held for the *exclusive* purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." (emphasis added) 29 U.S.C. § 1103(c)(1).

*date denied,* 774 F.2d 1391 (1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986). The Ninth Circuit reasoned that a private right of action should be implied:

First, the 1980 amendments to section 402(c)(2)(A), which added subparagraph (ii) concerning payments made by an employer by mistake of fact or law, was clearly designed for the benefit of employers. Multi–Employer Pension Plan Amendments Act of 1980, Pub.L. No. 96–364, § 310, 94 Stat. 1208, 1296 (1980). Second, a congressional intent to create a private remedy in favor of the employer is implicit in Section 403(c)(2)(A)(ii). Without such a remedy, the decision to return contributions mistakenly paid would be left solely to the interested trustee. Third, implying a private right of action furthers the congressional scheme of permitting restitution of contributions paid by mistake when equitable factors militate in favor of such restitution. Finally, no principle of federal-state comity renders a federal cause of action inappropriate; Congress preempted all state law regarding employee pension benefits effective with contributions made after January 1, 1975. 29 U.S.C. § 1144(a); *Martin v. Hamil,* 608 F.2d 725, 729 (7th Cir.1979).

*Award Service,* 763 F.2d at 1068.

The Eleventh Circuit rejected each of these arguments as incorrect or irrelevant. It read the Supreme Court cases which followed *Cort v. Ash* to require courts to put the greatest weight on Congressional intent, as do we, and it found a congressional intent to exclude an implied right of action for an employer. The Eleventh Circuit noted that the 1980 amendment "was apparently made in response to concerns expressed by multiemployer plan fiduciaries who were prevented from returning

mistaken contributions simply because they did not discover that a mistake had been made until more than a year after the mistaken payments were made." *Dime Coal,* 796 F.2d at 397 n. 3. In addition, it drew on the Supreme Court's reason for refusing to imply a cause of action in favor of a beneficiary under ERISA for extra-contractual damages caused by improper or untimely processing of benefit claims: "The six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (emphasis in original). As for the claim that the trustee would invariably refuse to make refunds, the Eleventh Circuit replied that "Congress has, to a significant degree, guarded against th[is] sort of arbitrary conduct.... By law, employees and employers must be equally represented on the board of trustees of an employee benefit trust fund. 29 U.S.C. § 186(c)(5)(B) [ (Labor–Management Relations Act) ]." *Dime Coal,* 796 F.2d at 399 n. 6. We find these rebuttals persuasive.

Having determined that there is no implied right of action for an employer under the refund section, we turn next to Coke's argument that it has a claim under the federal common law of restitution.[3]

*Is There A Federal Common Law Claim For Restitution of Overpayments To An ERISA Pension Plan?*

■ Ordinarily a restitution claim would be brought under state law. Because § 514 of ERISA, 29 U.S.C. § 1144(a)[4], preempts all state law relating to pensions, *Martin v. Hamil,* 608 F.2d at 729, the source of common law, if any, must be federal. The presumption, however, is that

---

3. The Fund's accurate observation that Coke has failed to plead its alternative theories of recovery in separate counts of its counterclaim has failed to dissuade us from considering the merits of the legal arguments in its memorandum.

4. This section, 29 U.S.C. § 1144(a), states in relevant part:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter II of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

there is no federal common law. "Federal courts, unlike state courts, are not general common-law courts and do not possess a general power to develop and apply their own rules of decision. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 [58 S.Ct. 817, 822, 82 L.Ed. 1188] (1938); *United States v. Hudson & Goodwin,* 7 Cranch [ (11 U.S.)] 32 [3 L.Ed. 259] (1812)." *City of Milwaukee v. Illinois,* 451 U.S. 304, 312, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981) (construing Federal Water Pollution Control Act Amendments of 1972). This presumption has been eroded in some areas:

We are not without ... precedent for a determination that federal [common] law governs; there are enclaves of federal judge-made law which bind the States. A national body of federal-court-built law has been held to have been contemplated by § 301 of the Labor Management Relations Act. *Textile Workers v. Lincoln Mills,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed. 2d 972 (1957)]. Principles formulated by federal judicial law have been thought by this Court to be necessary to protect uniquely federal interests, *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447 [62 S.Ct. 676, 86 L.Ed. 956 (1942)]; *Clearfield Trust Co. v. United States,* 318 U.S. 363 [63 S.Ct. 573, 87 L.Ed. 838 (1943)]. Of course the federal interest guarded in all these cases is one the ultimate statement of which is derived from a federal statute.

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964).

The question before us on this motion is whether ERISA is one of those areas in which federal courts may nevertheless fashion federal common law or equity. The Supreme Court has not ruled on this issue. Four members of the Court, however, agree that even though "it may well be" that courts generally may not find implied private remedies in ERISA,

The legislative history demonstrates that Congress intended federal courts to develop federal common law in fashioning the additional "appropriate equitable relief." [5] In presenting the Conference Report to the full Senate, for example, Senator Javits, ranking minority member of the Senate Committee on Labor and Public Welfare and one of the two principal Senate sponsors of ERISA, stated that "[i]t is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." Senator Williams, the Committee's Chairman and the Act's other principal Senate sponsor, similarly emphasized that suits involving beneficiaries rights "will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act." Section 301, of course, "authorizes federal courts to fashion a body of federal law" ... to be derived by "looking at the policy of the legislation, and fashioning a remedy that will effectuate that policy." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457 [77 S.Ct. 912, 918, 1 L.Ed.2d 972] (1957).

*Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 156, 105 S.Ct. 3085,

---

**5.** Justice Brennan's quote here refers to ERISA § 502(a)(3), 29 U.S.C. § 1132(a), which reads in part:

A civil action may be brought—
(1) by a participant or beneficiary
....
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title ["Liability for breach of fiduciary duty"]

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [see below] or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
.... (emphasis added).
The refund section, it should be noted, is in the subchapter (originally Title I of ERISA) to which subsection (3) above refers.

**750**

3097–98, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring in judgment).

These considerations lead us to part company with *Dime Coal* on the existence of a federal common equitable claim for restitution for refund of excess contributions.[6] The Eleventh Circuit based its conclusion that "no federal common law right to recovery of ... contributions exists," 796 F.2d at 399 n. 7, on the Supreme Court's statement that "the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) (airline has no federal common-law right to contribution from unions for liability imposed in class action under Title VII of Civil Rights act of 1964)).

There is no doubt that if Congress had preempted the field with a comprehensive statute that "spoke directly to [the] question" then there would be no place for federal common law. *Milwaukee v. Illinois*, 451 U.S. at 315, 101 S.Ct. at 1791. The separation of powers does not permit courts "to rely on federal common law 'by judicially decreeing what accords with "common sense and the public weal"'" when Congress has addressed the problem." *Id.* (quoting *TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978)). Nor is there any doubt that ERISA is a very comprehensive statute. But it does not follow—and in our view is not the case—that ERISA is a comprehensive statute which actually determines an employer's right to restitution.

The refund section states that ERISA "shall not prohibit" a plan administrator from making "the return of [a mistaken] contribution or payment to the employer." The *Dime Coal* court apparently read this as a congressional determination that a plan administrator may, at his or her unfet-

tered discretion, choose whether or not to make a refund to an employer. The harshness of this result may be tempered somewhat by the equal representation given to employers on the board of trustees of an employee pension plan. *See* 29 U.S.C. § 186(c)(5)(B). Nevertheless, we do not believe this to be a reasonable reading of the statute. Equal representation can mean deadlock; and deadlock tends to mean inaction. It would take more unequivocal language than that found in the refund section for us to conclude that Congress intended the potentially absurd consequences which might result if employers have no hope of recovering mistaken overpayments. Not every pension fund will necessarily be administered in a reasonable manner. In the absence of at least an equitable action, there will be no incentive for fund trustees to return overpayments to employers. Moreover, they will face substantial disincentives, not least of which is the exposure to lawsuits for breach of fiduciary duty. We do not imagine that the Congress which passed the 1980 amendments to ERISA intended employers to be completely at the mercy of fund trustees. *See Dumac*, 814 F.2d at 82–83 (although general equitable principles do not apply, court will not allow arbitrary and capricious retention of overpayments). Preventing such injustice has always been a function of equity.

Our view that there is a federal equitable action against a trustee who inequitably refuses a timely request to return a mistaken payment draws support from the legislative history discussed in the quotation from *Massachusetts Mut. Life Ins. Co. v. Russell, supra.* We understand the "shall not prohibit" language of the refund section to intend an exception from the rule that ERISA occupies the field, and that therefore ordinary equitable principles of restitution should apply. "[I]f Congress intended by this section to make recovery automatic once a mistake of fact is proved, and thereby alter the traditional principles of equity which otherwise would be applicable to such cases, it would have clearly

---

**6.** The *Dime Coal* opinion treats this issue in a footnote, with the caveat that it was not clearly

argued, not well presented, and not seriously pursued. 796 F.2d at 399 n. 7.

evidenced its intent to do so." *Teamsters Local 639–Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865, 868 (4th Cir.1981). In saying that ERISA "does not prohibit" a refund to employers, Congress implicitly left open the possibility that some other law might compel such a refund. As we have concluded that Congress did not intend to create a private right of action for employers under ERISA, this can only have been a common law equitable action. As state restitution law is preempted by ERISA, the action must be one arising under federal common law.

Equity provides the proper mediation between the principles embodied in the refund section and the overall command to which it is an exception. ERISA exists entirely to benefit workers and other plan beneficiaries. But we do not believe Congress wished to enact a program which was so potentially unfair to employers that they might seek to avoid participating in it.

CONCLUSION

We hold that Coke has stated a claim to equitable restitution under federal law. The Fund's motion to dismiss Coke's counterclaim is therefore denied.