**Sam GIARDONO, et al.,**
**Plaintiffs–Appellees,**

v.

**George M. JONES,**
**Defendant–Appellant.**

No. 87–3112.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1988.

Decided Feb. 1, 1989.

James M. Gecker, Ross & Hardies, Chicago, Ill., for defendant-appellant.

Marc M. Pekay, Marc M. Pekay, P.C., Chicago, Ill., for plaintiffs-appellees.

Before WOOD, Jr., EASTERBROOK, Circuit Judges, and GORDON, Senior District Judge.*

MYRON L. GORDON, Senior District Judge.

This appeal requires the court to explore certain boundaries of the subject matter jurisdiction granted to the federal district courts by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The specific issues to be resolved are: (1) whether the district court erred in dismissing the appellant's counterclaims; and (2) whether the district court abused its discretion in denying attorney's fees to the appellant. We hold that the district court lacked subject matter jurisdiction over the appellant's counterclaim under ERISA, and it properly dismissed the pendent counterclaims; in addition, it did not abuse its discretion in denying attorney's fees to the appellant.

## BACKGROUND

Prior to 1973, the appellant, George Jones, was a member of the Operative Plasterers and Cement Finishers International Union Local 382 (the "union") and a participant and beneficiary of the Construction Industry Welfare Fund of Rockford and the Construction Industry Retirement Fund (the "fund"). In 1973, Mr. Jones ceased to be an employee when he went into the cement contractor business as a sole proprietor and became an employer. However, he wanted to continue the health

---

\* Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

insurance benefits that he had received as a union member, so at the behest of the union he entered into a written agreement with the union which provided that, as an employer, he recognized the union and adopted the area master contract. For ten years after signing the agreement, Mr. Jones paid for and received health insurance coverage, but he did not honor the union contract and employed only nonunion labor.

During that period the union did nothing to enforce the agreement. After ten years, the trustees of the fund brought the underlying action to recover employee benefit contributions which would have been owed had the agreement that Mr. Jones signed been enforceable. The trustees based jurisdiction for their complaint on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and on § 502 of ERISA, 29 U.S.C. § 1132.

George Jones responded to the suit with the counterclaims that are now at issue in this appeal. The counterclaims asserted that the plaintiffs violated their fiduciary duty owed to Mr. Jones under both ERISA and the state common law and, also that the plaintiffs fraudulently induced Mr. Jones to subscribe to the collective bargaining agreement with the union. The invoked grounds for jurisdiction over the counterclaims were ERISA and the doctrine of pendent jurisdiction.

The district court dismissed Mr. Jones' ERISA counterclaim on the ground that, as an employer, he lacked standing to bring an ERISA action. The pendent state counterclaims were dismissed for failure to state a cause of action against the trustees. The district court held that the fraud counterclaim failed for want of specificity against the trustees. The district court noted that although the claim "conceivably" stated a cause of action against the union, the union was not a party to the case.

After a bench trial on the merits of the complaint, judgment was entered for defendant Jones. The district court held that the evidence did not establish a contract, and therefore, the defendant Jones was not bound by the obligations of the area master collective bargaining agreement. The district court dismissed the counterclaims and then denied Mr. Jones' petition for attorney's fees.

## ERISA JURISDICTION

The appellant urges that he properly brought the ERISA counterclaim either as a plan participant with an express right of action, or as an employer with an implied right of action. The jurisdictional provision of ERISA provides for actions by enumerated parties:

> ... the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by *the Secretary* or by a *participant, beneficiary,* or *fiduciary.*

29 U.S.C. § 1132(e)(1) [emphasis added].

■ First, the appellant argues that he has standing to bring an ERISA counterclaim as a plan participant, notwithstanding the fact that he is also an employer. A participant includes "any employee or former employee of an employer, or any member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan ..." 29 U.S.C. § 1002(7). There is no question that Mr. Jones had previously qualified as a plan participant while he was an employee and a member of the union. The question is whether he continued to be a plan participant once he became an employer. In other words, does the statutory definition of a plan participant encompass a former employee who has become an employer and, nevertheless, is permitted to purchase plan coverage in his status as employer?

■ An employer cannot ordinarily be an employee or participant under ERISA. It is a fundamental requirement of ERISA that "... the assets of a plan shall never inure to the benefit of any employer ...". 29 U.S.C. § 1103(c)(1). In *Peckham v. Board of Trustees, Etc.,* 653 F.2d 424, 427 (10th Cir.1981), the court held that this statutory mandate precluded sole proprietors from having the dual status of employ-

er-employee for purposes of ERISA. *Accord Chase v. Trustees of W. Con. of T. Pension T.F.*, 753 F.2d 744, 748 (9th Cir. 1985).

The appellant, however, contends that it has been held that an employer may have "dual status" standing as a fiduciary to sue under ERISA. *Ed Miniat, Inc. v. Globe Life Ins. Group*, 805 F.2d 732 (7th Cir. 1986); *U.S. Steel Corp. v. Pennsylvania Human Relations Commission*, 669 F.2d 124 (3rd Cir.1982); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101 (6th Cir.1983). Therefore, the appellant urges that the courts have recognized a general principle of multiple roles for employers which permits an employer to have standing whenever he also has the status of a plan participant.

■ However, the fact that an employer may have standing as a fiduciary does absolutely nothing the advance the argument that an employer may similarly have standing as a participant. When an employer files suit as a fiduciary, he acts for the benefit of plan participants and beneficiaries; he does not act in his own interest and thus does not risk running afoul of the requirement that the assest of a plan may not inure to the benefit of an employer. 29 U.S.C. § 1103(c)(1); *see also, H.C.A. Health Services v. Brown*, No. 87–C–4029, slip op at 3 (N.D.Ill. June 24, 1988) [1988 WL 71219] ("an independent contractor's decision to independently subscribe to a policy shared by the company with which it has a contractual relationship does not transform the contractor into an employee for purposes of ERISA"); *R.M. Bowler Contract Hauling v. Central States, Etc.*, 547 F.Supp. 783, 784 (S.D.Ill.1982) ("employers who contribute to employee benefit plans do not fit into any of the four limited categories of plaintiffs"). As pointed out by the court in *Peckham*, this view is reflected in the regulations promulgated by the Secretary of Labor to implement the Act. *Id.* at 427. Such regulations exclude from the definition of an employee any individual who wholly owns a trade or business, whether incorporated or unincorporated. 29 C.F.R. § 2510.3–3(c)(1). ERISA

was enacted by Congress for the purpose of protecting the interests of employees and their beneficiaries in employee benefit plans. 29 U.S.C. § 1001(a).

The appellant next argues that, as an employer, he has an implied cause of action under ERISA because he was injured by the actions of the plan trustees and that those injuries fell within the zone of interests protected by ERISA. In support of this proposition, the appellant cites *Fentron Industries v. National Shopmen Pension Fund*, 674 F.2d 1300 (9th Cir. 1982). In *Fentron*, the court of appeals for the ninth circuit stated:

> Finally, we do not believe that Congress, in enacting ERISA, intended to prohibit employers from suing to enforce its provisions. The omissions of employers from 29 U.S.C. § 1132 is not significant in this regard. There is nothing in the legislative history to suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers. *See, e.g.*, H.R.Rep. No. 1280, 93d Cong., 2d Sess. 326–328 (1974), *reprinted in* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 4593–95 (1976). In view of the intent of Congress to protect employer-employee relations, we hold that the statute does not prohibit employers from suing to enforce its provisions. *Fentron*, at 1305.

The *Fentron* court determined that a non-enumerated party may have standing to sue under ERISA if the non-enumerated party satisfies the three-part test derived from *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *Fentron*, at 1303.

The approach taken by the *Fentron* court has generally been rejected by most other courts on the ground that it improperly assumes a grant of subject matter jurisdiction. *See Grand Union Co. v. Food Employers Labor Relations Assn.*, 808 F.2d 66, 71 (D.C.Cir.1987); *Northeast*

*Dept. ILGWU v. Teamsters Local U. No. 229*, 764 F.2d 147, 153–54 (3rd Cir.1985); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288–89 (5th Cir.1988); *Whitworth Bros. Storage Co. v. Central States*, 794 F.2d 221, 228 (6th Cir. 1986); *Dime Coal Co., Inc. v. Combs*, 796 F.2d 394, 396 (11th Cir.1986). These cases demonstrate that the key question is whether the grant of jurisdiction in ERISA is limited to the list of parties enumerated in § 1132(e)(1) who are specifically empowered to sue. In *Pressroom Unions Etc. Fund v. Continental Assur. Co.*, 700 F.2d 889, 892 (2nd Cir.1983), the court stated:

the *Fentron* court applied an inappropriate standard in resolving this issue. We focus not on whether the legislative history reveals that Congress intended to *prevent* actions by employers or other parties, but instead on whether there is any indication that the legislature intended to *grant* subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1). [emphasis in original]

Earlier this year, we had occasion to note the existence of the split among the courts of appeals as to whether the grant of jurisdiction in § 1132(e)(1) is exclusive. *Mutual Life Ins. Co. of New York v. Yampol*, 840 F.2d 421, 423 n. 2 (7th Cir.1988) (resolving the issue of standing on the ground that an employer may have standing as a fiduciary); *cf. Soft Drink Industry Local Union No. 744 Pen. Fund v. Coca–Cola*, 679 F.Supp. 743 (N.D.Ill.1988) (rejecting the implied cause of action approach); *Amalgamated Indus. Union Local 44–A v. Webb*, 562 F.Supp. 185, 188 (N.D.Ill.1983) (expressly adopting the *Pressroom* approach). The instant case places the issue squarely before the court. If the grant of jurisdiction is exclusive to the parties enumerated in § 1132(e)(1), then the district courts as well as this court lack the subject matter jurisdiction to engage in an analysis of whether standing is to be implied.

■ It is fundamental that the jurisdiction of the district courts is limited and that the boundaries of the jurisdiction are determined by Congress. Further, the courts should not imply an additional private right of action when a statute already has an elaborate enforcement mechanism. *Middlesex County Sewage Authority v. National Sea Clammers*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981).

■ In *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983), the Court stated:

The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, see *infra*, [463 U.S.] at 25 [103 S.Ct. at 2854], as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes.

Further, in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1984), the Court elaborated on congressional intent in the context of ERISA:

The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." [emphasis in original]

Although in *Russell* the Court considered whether the judiciary may imply a cause of action for extra-contractual damages, as opposed to the precise issue at bar, it nevertheless made it clear that the statutory scheme of ERISA does not lend itself to judicial expansion of available remedies. We hold that the grant of subject matter jurisdiction in § 1132(e)(1) is exclusive. The courts are without the power to expand their jurisdiction under ERISA in order to imply a cause of action for non-enumerated parties.

It follows that the district court was without subject matter jurisdiction to entertain the appellant's ERISA counterclaim.

## THE PENDENT COUNTERCLAIMS

The issue of whether the district court erred in dismissing the pendent counterclaims of breach of fiduciary duty and fraud need not detain us long. The exercise of pendent and ancillary jurisdiction is within the discretion of the district court. *See Baltimore Orioles Inc. v. Major League Baseball Players Association,* 805 F.2d 663, 682 (7th Cir.1986). "[D]ismissal of the pendent claim is presumptively indicated unless the court is convinced that retention would probably create substantial economy, fairness, or convenience." *Fields v. Fidelity General Insurance Company,* 454 F.2d 682, 686 (7th Cir.1971) (quoting Note, *UMW v. Gibbs and Pendent Jurisdiction,* 81 Harv.L.Rev. 657 (1968)). Judge Roszkowski determined that the counterclaims more properly stated common law causes of action against the union rather than against the trustees of the fund. Since the union was not a party to the action, it was clearly not an abuse of discretion to dismiss the claims.

## ATTORNEY'S FEES

The appellant asserts that as a prevailing employer defending an ERISA claim, he is entitled to attorney's fees. In *Chicago Painters & Decorators Pension Fund v. Karr Brothers, Inc.,* 755 F.2d 1285, 1292 (7th Cir.1985), this court adopted the following test for determining whether to award attorney's fees to prevailing defendants in ERISA cases:

> a court should award attorney's fees to the winning party unless the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious.

In applying this test, the district court determined that the case hinged on a close factual question as to whether there was mutual assent to the terms of the master collective bargaining contract. The district court noted that "[w]ith the change of a few factual findings, the plaintiffs may have had a meritorious claim." The standard of our review is abuse of discretion. *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). We are persuaded that there was no such abuse in the matter at bar.

## CONCLUSION

The district court properly dismissed the appellant's counterclaim under ERISA, and it did not abuse its discretion in dismissing the pendent counterclaims or in denying an award of attorney's fees. For the foregoing reasons, the order and judgment of the district court is affirmed, as is the judgment denying an award of attorney's fees to the appellant. Costs on this appeal are awarded in favor of the appellees.

EASTERBROOK, Circuit Judge, concurring.

One portion of a subsection of ERISA provides that "the assets of a [pension or welfare] plan shall never inure to the benefit of any employer", 29 U.S.C. § 1103(c)(1), from which my colleagues deduce that Jones—formerly an employee and now his own boss in a proprietorship—may not contend that a welfare plan and a union violated duties owed to him. If he prevailed, then "the assets of a plan [would] inure to the benefit of [an] employer". How far does this "plain language" take us? Suppose Jones did some plastering work for a pension plan's offices and tried to collect his fee. Could the plan balk on the ground that the price specified by contract would inure to the benefit of an employer? Closer to the point, suppose Jones had acquired vested rights to pension benefits before setting up his own business and had applied for payments while continuing to run his firm. Could the plan turn him down on the ground that by going into business he forfeited everything?

Language is a social tool. Every utterance takes meaning from its contexts—linguistic, structural, cultural, functional. Even so bald a command as "Keep Off The Grass!" is less than universal: it does not speak to the gardener. Mathematical statements, sometimes offered as the epitome of precision, also depend on context. The statement "$a^2 + b^2 = c^2$" is vapid standing alone and correct only if we know from another source that the letters repre-

sent the length of the sides of right triangles, and if variables properly may be used in place of numbers, a point denied by some mathematicians until mid-eighteenth century. See Morris Kline, *Mathematics: The Loss of Certainty* 124–26 (1980). The contexts of § 1103(c)(1) matter too.

Section 1103(c)(1) says in full (emphasis added):

> Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive *purposes of providing benefits to participants in the plan* and their beneficiaries and defraying reasonable expenses of administering the plan.

An employer with vested benefits is still a "participant" in the plan. "The term 'participant' means any ... former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan". 29 U.S.C. § 1002(7). This description fits the current employer entitled to benefits on account of earlier work as an employee. Section 1103(c)(1) tells us that the assets of the plan are to be used to pay benefits to which participants are entitled. Jones, as participant, may seek to recover even if Jones, as employer, may not. Only losing sight of the linguistic context and function of the provision that "assets ... shall never inure to the benefit of any employer" could lead to the conclusion that Jones may not seek recovery against the plan *for any reason* while he continues to operate his own business.

It may well be that a sole proprietor cannot enroll himself in a plan alongside his employees. So *Peckham v. Board of Trustees,* 653 F.2d 424 (10th Cir.1981), held on the authority of § 1103(c)(1) and 29 C.F.R. § 2510.3–3(c)(1). This does not mean that courts must dismiss all claims by owner-employees, however, for proprietors may be participants within the meaning of § 1002(7) and under some circumstances may obtain restitution from a plan, a point

the Tenth Circuit made in a clarifying decision. *Peckham v. Board of Trustees,* 719 F.2d 1063, modified, 724 F.2d 100 (10th Cir.1983). The regulation on which *Peckham* relied says that a person "shall not be deemed to be [an] employee[ ] *with respect to* a trade or business ... which is wholly owned by the individual", § 2510.3–3(c)(1) (emphasis added), suggesting that the capacity in which the person acts or files suit matters. Cf. *Reiherzer v. Shannon,* 581 F.2d 1266, 1272–76 (7th Cir.1978) (the principal stockholder and manager of a closely-held firm may participate in a pension plan, for the corporation alone is the "employer"). The majority relies on the first *Peckham* opinion (*supra* at 411–12) and neglects the second and third; it cites *Chase v. Trustees,* 753 F.2d 744, 748 (9th Cir.1985), as in accord with *Peckham* but overlooks the fact that *Chase* endorsed only the third *Peckham* opinion.

Jones pursued his counterclaim in his role as a "participant" in his former employer's plan. He did not seek benefits on account of his years as a proprietor. He contended, instead, that the pension trusts and the local union defrauded him at the time he set up his business by assuring him that he could remain a participant in the welfare fund in order to keep health insurance at favorable rates. A contention of this sort is not barred by § 1103(c)(1). It may fail to state a claim on which relief may be granted, for the documents governing the nature of pension and welfare plans convey accurate information, and a person who neglects to read the dispositive documents may not contend that he did not know their significance. See *Acme Propane, Inc. v. Tenexco, Inc.,* 844 F.2d 1317 (7th Cir.1988). But it does not founder as a consequence of § 1103(c)(1).

Jones's counterclaim invoked both ERISA and state-law theories. The district court dismissed the counterclaim on jurisdictional grounds to the extent it depended on ERISA. Section 1103(c)(1), even if it applies, is not a "jurisdictional" statute; it is no more than a reason why a claim cannot succeed. Moreover, Jones did not need ERISA as a source of jurisdiction. Both the district court and the majority

treat ERISA as the only source of subject-matter jurisdiction for the counterclaim, and the state-law aspects of the counterclaim as pendent to the jurisdiction supplied by the ERISA counterclaim. Yet the counterclaim, and all of its theories of liability, was a compulsory counterclaim to the welfare fund's suit. See Fed.R.Civ.P. 13(a). There is no need for an independent source of subject-matter jurisdiction over a compulsory counterclaim, and the rejection of the claim to the extent it was based on ERISA does not call for (or even permit) the termination of the counterclaim to the extent it was based on state law.

The district court rejected the state-law claims to the extent they concerned the union because the union had not been joined as a party. It dealt with the state-law claims against the plan on the ground that "they do not allege with adequate specificity an action against the trust fund." This rationale supports dismissal of the entire counterclaim, whether founded on ERISA or on state law. The pertinent portion of the counterclaim says:

> 5. Plaintiffs [trustees of the welfare plan], acting in concert with the Union, falsely told Jones that only by signing a contract with the Union and by maintaining his Union membership as a "contractor-member", could he continue his participation in the Rockford Welfare Fund.

This is not the particularity that Fed.R. Civ.P. 9(b) requires when a party alleges fraud. Jones omits who said what, when, to whom. It is scarcely possible to imagine a more generic allegation. So the counterclaim had to be dismissed.

Concerning attorneys' fees, the district court said: "[w]ith the change of a few factual findings, the plaintiffs may have had a meritorious claim." That is an understatement. Given *Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988), which was decided after the trial of this case, the welfare fund *had* a meritorious claim. Jones signed a contract with the fund promising to make payments on behalf of all of his employees. Under *Lynch*, the local union's willingness to wink at noncompliance with the collective bargaining agreement does not excuse Jones's disregard of his independent obligation to the trust. The fund elected not to appeal, and its willingness to accept a problematic judgment on the merits did not expose it to an award of fees.