CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS HEALTH AND
WELFARE FUND and Howard McDou-
gall, Trustee, Plaintiffs,

v.

BORDEN, INC., a New Jersey
Corporation, Defendant and
Third–Party Plaintiff,

v.

LOCAL UNIONS NOS. 89, 135, 144
AND 215, et al., Third–Party
Defendants.

No. 88 C 7340.

· United States District Court,
N.D. Illinois, E.D.

Jan. 31, 1990.

Albert M. Madden and Constance M. Borek, Cent. States Law Dept., Rosemont, Ill., for plaintiffs.

John G. Levi and Brian J. Gold, Sidley & Austin, Chicago, Ill., for defendant and third-party plaintiff.

Marvin Gittler, Asher, Pavalon, Gittler & Greenfield, Chicago, Ill., and Frederick W. Dennerline, III, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., for third-party defendants Local Unions Nos. 89, 135, 144 and 215.

## ORDER

NORGLE, District Judge.

Before the court is the motion of plaintiffs and counter-defendants, Central States, Southeast and Southwest Areas Health and Welfare Fund and Howard McDougall, Trustee (hereinafter collectively "Central States") to dismiss the counterclaim and counts I through IV of the third-party complaint of defendant and counter-plaintiff, Borden, Inc. It involves issues of preemption of state law claims, implication of causes of action under federal statutes and creation of federal common law.

This matter began as a collection action in which Central States filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover health and welfare contributions allegedly owed by Borden. On November 15, 1988, Borden filed its answer and counterclaims. On November 16, 1988, Borden filed a third-party complaint, naming seven trustees (the "Trustees") and local unions 89, 135, 155 and 215 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Unions") as third-party defendants.

In its counterclaim and in counts I through IV of its third-party complaint, Borden seeks recovery of contributions made to the health and welfare plans and other damages based upon (1) tortious interference with the collective bargaining agreements between Borden and the Unions; (2) breach of the trust agreement; (3) breach of the implied covenant of good faith and fair dealing contained in the Trust Agreement; and (4) failure to refund mistaken contributions.

Central States moves to dismiss the counterclaim and counts I through IV of the third-party complaint. Central States contends that counts I through III of both the counterclaim and the third-part complaint are preempted by ERISA, and that count IV of both the counterclaim and the third-party complaint should be dismissed because there is no cause of action for a refund of mistaken contributions.

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

## FACTS

The following allegations of Borden, along with the reasonable inferences to be drawn therefrom, are taken as true at this juncture. Central States is an employee benefit plan administered by plaintiff, Howard McDougall and seven other trustees named as third-party defendants. On August 31, 1987, Borden assumed certain liabilities of Culbro Snack Foods, Inc. ("Culbro"), including certain rights and obligations under three collective bargaining agreements with the Unions.

The three collective bargaining agreements required Borden to provide covered employees with health and welfare benefits under certain specified plans offered through Central States and to make contributions sufficient to fund those plans. (Third–Party Complaint at ¶ 12). The Trust Agreement [1] required Central States to receive, hold and manage employer contributions in accordance with the provisions of the collective bargaining agreements for the uses and purposes set forth in the Trust Agreement. (Third–Party Complaint ¶ 9).

In July, 1985, Central States issued Special Bulletin 85–4 to all local unions, including the Unions, all employers and all participants under the plans. (Third–Party Complaint at ¶ 14). This bulletin announced increases in contribution rates for plan years beginning in 1985, 1986 and 1987 for Central States' health and welfare benefit plans, including those plans provided by Borden or Culbro, as Borden's predecessor in interest, for covered employees pursuant to the collective bargaining agreements. (Third–Party Complaint at ¶ 15).

In March, 1986, Central States issued Special Bulletin 86–5 which announced new contribution rates for plan years beginning in 1986, 1987 and 1988 that were lower than the rates for those years announced in special Bulletin 85–4. Although Special Bulletin 86–5 was issued to all local unions,

including the Unions, it was not issued to any employers, including Borden. (Third–Party Complaint at ¶ 16). Because Central States failed to give Borden notice of the new reduced contribution rates, during the 1986 plan year and continuing until November 29, 1987, Borden continued to make contributions at the higher rates specified in Special Bulletin 85–4, even though it was required to make contributions only at the lower rates specified in Special Bulletin 86–5. (Third–Party Complaint at ¶¶ 17, 18).

The Unions were aware that Borden and Culbro had been making contributions at rates specified in Special Bulletin 85–4 and that such rates were sufficiently high to support higher level benefit plans. (Third–Party Complaint at ¶ 19). Without obtaining any approval of or giving any notice whatsoever to Borden, the Unions unilaterally requested Central States to provide higher level benefit plans to its bargaining unit employees. (Third–Party Complaint at ¶ 19).

Central States agreed to the Unions' request to increase benefit levels, even though the Trustees knew that the collective bargaining agreements specified that the covered employees were to receive lower levels of benefits, and despite the fact that they knew Central States was not authorized to provide benefit plans different from those provided under the collective bargaining agreements without the concurrence of both Borden and the Unions. (Third–Party Complaint at ¶¶ 20, 21). Central States failed to request the approval of Borden or even to provide Borden with any notice of the increase.

## DISCUSSION

■ Central States motion to dismiss is granted with respect to Count I. ERISA § 514 preemption applies to state law causes of action relating to an employee benefit plan. 29 U.S.C. § 1144(a); [2] *see,*

---

**1.** Although both movant and respondent refer to the Trust Agreement and its terms in their memoranda, the Trust Agreement is not of record.

**2.** Except as provided in subsection (b) of this section, the provisions of this subchapter and

subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

*e.g., Turner v. Retirement Plan of Marathon Oil Co.,* 659 F.Supp. 534 (N.D.Ohio 1987); *Brock v. Self,* 632 F.Supp. 1509 (W.D.La.1986). Count I asserts a state law based claim against Central States for tortious interference with the collective bargaining agreements between Borden and the Unions. However, ERISA preemption still applies because the "conduct challenged was part of the administration of an employee benefit plan." *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1505 (9th Cir.1985).

■ In the alternative, count I is also preempted by § 301 of the Labor Management Relations Act. 29 U.S.C. § 185;[3] *see Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis-Chalmers Corp. v. Leuck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Section 301 mandates "resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements and thus to promote the peaceable, consistent resolution of labor management disputes." *Lingle,* 108 S.Ct. at 1880 (*citing Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). The result is not preemption of every state law based dispute "tangentially involving a provision of a collective-bargaining agreement," but rather only of "state law rights and obligations that do not exist independently of private [collective bargaining] agreements." *Allis-Chalmers Corp.,* 471 U.S. at 211, 213, 105 S.Ct. at 1911, 1912. While the scope of § 301 preemption is not, as yet, fully defined, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract that claim must either be treated as a § 301 claim, ..., or dismissed as preempted by federal labor contract law (citations omitted)." 471 U.S. at 220, 105 S.Ct. at 1915; *see Lingle,* 108 S.Ct. at 1881 (preemption where resolution of state law claim

depends upon the meaning of the collective-bargaining agreement); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2430–31, 96 L.Ed.2d 318 (1987); *IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 2169, 95 L.Ed.2d 791 (1987) (preemption applies where nature and scope of duty owed is determined by reference to collective-bargaining agreement).

The Seventh Circuit in *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982), has indicated that a claim for tortious interference with a collective bargaining agreement might not be preempted by § 301. Although acknowledging the uncertainty of the scope of § 301 jurisdiction resulting from whether § 301's use of the language " 'between an employer and a labor organization representing employees' refers to who may be party to a suit or to what types of contracts are actionable", 673 F.2d at 946, the *Loss* court concluded that § 301 did not provide the basis for an action against a non-party to a collective bargaining agreement. *Id.* It then commented in a footnote on the viability, or lack thereof, of a tortious interference claim under § 301. 673 F.2d at 948 n. 6. Assuming the coterminous nature of § 301 jurisdiction and preemption, the *Loss* court's comments cut against a finding of § 301 preemption of count I. However, as Judge Zagle has noted, the *Loss* Court did not have the benefit of the subsequent Supreme Court decisions which focused the preemption inquiry "on whether the terms of the labor contract must be analyzed in order to resolve the state law claim, and not whether the parties to the state law claim are the same parties to the labor agreement." *Brown v. Keystone Consolidated Ind., Inc.,* 680 F.Supp. 1212, 1222 (N.D.Ill.1988) (also noting that the scope of § 301 preemption may affect the availability of remedies for certain parties).

29 U.S.C. § 1144(a).

**3.** Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any dis-

trict court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Clearly § 301 preemption applies to count I, since to determine whether the collective-bargaining agreements, and more precisely Borden's rights thereunder, have been tortiously interfered with necessarily requires analysis of the terms of the collective bargaining agreements. It will be the meaning of the agreements that will be the first inquiry. Such an inquiry should be undertaken using Borden's § 301 claim as the vehicle.

With respect to the remaining causes of action at issue, pled in Counts II, III and IV, Borden asserts that all three may be maintained under the federal common law and that its ability to bring the cause of action pled in count IV may, in the alternative, be implied from § 403(c)(2)(A)(ii) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii), often called "the refund section."[4] Whether a cause of action on behalf of an employer may be implied from § 403(c)(2)(A)(ii) or arises under the federal common law is the subject of controversy. Ultimately, the alternate sources of jurisdiction are different roads to the same destination.

■ Borden acknowledges that Counts II and III of the counterclaim and third-party complaint, as state law claims relating directly to the health and welfare plans, are preempted by ERISA. *See Martin v. Hamil,* 608 F.2d 725, 729 (7th Cir.1979). However, it asserts and the court agrees that these claims are actionable under federal common law. "[C]ourts are authorized to create federal common law governing an employer's right of restitution when the provisions of ERISA preempt the state law of restitution." *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 235, 236 n. 23 (6th Cir.1986) ("the preemption of state law by ERISA and the

congressional directive to develop a federal common law of employee benefit plans require application of federal law to actions premised on the contractual obligations created by ERISA plans"); *see also Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) ("The legislative history demonstrates that Congress intended federal courts to develop federal common law in fashioning" relief under ERISA); *Crews v. Central States Southeast and Southwest Areas Pension Fund,* 788 F.2d 332 (6th Cir.1986); *Murphy v. Heppenstall Co.,* 635 F.2d 233, 237 (3rd Cir.1980) ("In enacting ERISA, Congress authorized the evolution of a federal common law of pension plans"); *Ryan–Walsh Stevedoring Co. v. Cormier,* 675 F.Supp. 337, 340 (E.D.La. 1987) ("Interpretation and supplementation of ERISA as a matter of federal common law is consistent with resolution of labor disputes under the LMRA").

■ Borden contends, in count II, that the trust agreement provides for a refund of contributions made by a mistake of fact and that Central States breached the trust agreement by refusing to refund contributions made by Borden pursuant to Borden's mistaken belief that it was contractually obligated to make contributions at the rates specified in Special Bulletin 85–4, as opposed to the lower rates specified in Special Bulletin 86–5. Borden further contends, in count III, that Central States breached an implied covenant of good faith and fair dealing because Central States failed to notify Borden of the reduced rates specified in Special Bulletin 86–5 and subsequently refused to refund Borden's overpayments. These allegations are sufficient

4. In the case of a contribution, or a payment of withdrawal liability under part 1 of subtitled E of subchapter III of this chapter—

(1) made by an employer to a plan (other than a multiemployer plan) by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution, and

(ii) made by an employer to a multiemployer plan by a mistake of fact or law (other than

a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

29 U.S.C. § 1103(c)(2)(A).

to state a cause of action under federal common law.

[redacted] Count IV of the counterclaim and of the third-party complaint also states a cause of action under the federal common law of equitable restitution. *See Central States Southeast and Southwest Areas Pension Fund v. Houston Pipe Line Co.*, 713 F.Supp. 1527, 1534–35 (N.D.Ill.1989); *Soft Drink Ind. Local Un. 744 Pension Fund v. Coca–Cola*, 679 F.Supp. 743, 750 (N.D.Ill.1988). "It would taken more unequivocal language than that found in the refund section … to conclude that Congress intended the potentially absurd consequences which might result if employers have no hope of recovering mistaken overpayments." 679 F.Supp. at 750. Indeed, "[i]n the absence of at least an equitable action, there will be no incentive for fund trustees to return overpayments to employers." *Id.*

Even though ERISA is a comprehensive statute, it does not actually determine an employer's right to restitution. *Soft Drink Ind. Local*, 679 F.Supp. at 750. The *Soft Drink Ind. Local* and *Houston Pipe Line Co.* decisions are examples of the appropriate circumstance in which "courts may develop a federal common law governing employee benefit plans in order to supplement the statutory scheme." *Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 390 (7th Cir.1986).

Section 403(c)(2)(A)(ii) also supports the conclusion that an employer may bring a federal equitable action for restitution of mistaken contributions. "In saying that ERISA 'does not prohibit' a refund to employers, Congress implicitly left open the possibility that some other law might compel such a refund." 679 F.Supp. at 751; *see also Id.* at 749 (quoting *Massachusetts Mut. Life Ins. Co.*, 473 U.S. at 156, 105 S.Ct. at 3097 (Brennan, J., concurring)). *Kwatcher v. Mass. Serv. Employees Pension Fund*, 879 F.2d 957 (1st Cir.1989); *Plucinski v. I.A.M. Nat'l. Pension Fund*, 875 F.2d 1052 (3rd Cir.1989); *Whitworth Bros. Storage Co.*, 794 F.2d at 236, *but see Dime Coal Co., Inc. v. Combs*, 796 F.2d 394 (11th Cir.1986).

[redacted] Central States relies heavily upon the provision that "the assets of a plan shall never inure to the benefit of any employer." ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1)[5]. However, mistaken contributions can be "returned" or "refunded" in most cases without requiring the fiduciary to actually disgorge funds. The employer can simply be issued a credit for the amount of the mistaken contribution, to be applied towards future contribution obligations.[6]

CONCLUSION

Accordingly, Central States' motion to dismiss is granted with respect to count I and denied with respect to counts II through IV.

IT IS SO ORDERED.

[redacted]

5. Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1103(c)(1).

6. Having concluded that Count IV may be brought under Federal common law, the issue of whether a cause of action may be implied under § 403(c)(2)(A)(ii) need not be addressed.