D & F CORPORATION, a Michigan corporation; Jay/Enn Corporation, a Michigan corporation; Models & Tools, Inc., a Michigan corporation; Troy Pattern & Model, Inc., a Michigan corporation; Aero Detroit, Inc., a Michigan corporation; Eifel Pattern & Model Co., a Michigan corporation; Pattern Guild & Products, Inc., a Michigan corporation; Stempin Prototype, Inc., a Michigan corporation; and Astro–Netics, Inc., a Michigan corporation, Plaintiffs,

v.

The BOARD OF TRUSTEES of the PATTERN & MODEL MAKERS ASSOCIATION of WARREN & VICINITY DEFINED BENEFIT PENSION PLAN, Defendant.

Civ. A. No. 91–CV–72624–DT.

United States District Court, E.D. Michigan, S.D.

April 29, 1992.

Paul Townsend, Jr. and Dykema Gossett, Detroit, Mich., for plaintiffs.

H. David Kelly, Jr., Novara, Tesija & Nouhan, P.C., Southfield, Mich., for defendant.

OPINION AND ORDER REGARDING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DEFENDANT'S MOTION TO DISMISS

ROSEN, District Judge.

### I. INTRODUCTION

This ERISA declaratory judgment action is presently before the Court on the Objections of the Plaintiffs to U.S. Magistrate Judge Virginia M. Morgan's Report and

Recommendation recommending that the Court grant the Motion of Defendant Board of Trustees of the Pattern & Model Makers Association of Warren and Vicinity Defined Benefit Pension Plan to Dismiss Plaintiff's Complaint in its entirety. Having reviewed Defendant's Motion and supporting Brief, Plaintiffs' Response Brief, the Magistrate Judge's Report and Recommendation, Plaintiff's Objections to the Report and Recommendation, Defendant's Response to Plaintiff's Objections, and the entire court file of this matter, and having heard the oral arguments of the parties' attorneys at the March 23, 1992 hearing, the Court is now prepared to rule on this matter. This Opinion and Order sets forth that ruling.

## II. FACTUAL BACKGROUND

As the Magistrate Judge observed, the essential facts pertaining to this matter are not in dispute.

Plaintiffs are corporate employers who, as a result of collective bargaining agreements with the Pattern and Model Makers Association of Warren and Vicinity, AFL–CIO (the "Union"), and pursuant to the terms of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001, et seq., established and contributed to a multi-employer "Defined Benefit Pension Plan". The Defendant Board of Trustees is the administrator of that Plan. The Plan was established in 1967.

Until 1985, the collective bargaining agreements did not specify the amount of the pension benefits under the Plan. Rather, the agreements only specified the amount which each employer was obligated to contribute to the Plan, and the Trustees were granted the power to determine the level of the benefits.

In December 1984, however, the Union and the employers entered into a supplemental collectively-bargained agreement (the "Supplemental Agreement"), which became effective February 1, 1985, pursuant to which employee benefits under the Defined Benefit Plan would be increased. The Supplemental Agreement provided that to fund the increased benefits under the Defined Benefit Plan, the Trustees would purchase a "dedicated portfolio" of bonds with the Plan's assets, and then would "freeze" the Plan with no further accrual of benefits and no further employer contributions. The Union and the employers further agreed to establish a new plan—a "defined contribution plan"—to which the employers would contribute instead of making further contributions to the Defined Benefit Plan. The employers' initial contribution to the new defined contribution plan was 80 cents per hour for each covered individual. This amount was increased to 90 cents per hour effective March 6, 1985. The amount of the employers' contributions to the defined contribution plan was subsequently further increased through contract negotiations from 90 cents per hour as of March 1985, to $1.55 per hour by April 1991.

The February 1985 Supplemental Agreement further provided:

The Employer shall be responsible for all net charges to the plan's Funding Standard account.... If it becomes necessary, in the opinion of the plan's actuary, for the Employer to resume contributions to the defined benefit plan, the amount of the Employer's contribution to the defined contribution plan ... shall be correspondingly reduced by the amount of such contribution.

[Supplemental Agreement, para. 1. Plaintiff's Complaint, Ex. C.]

From February 1985 until May 1991, the employers made no contributions to the frozen Defined Benefit Plan. Instead, as agreed in the Supplemental Agreement, they made contributions to the new defined contribution plan. However, in May 1991, the Plan Trustees informed the employers that they would have to contribute to the frozen Defined Benefit Plan 25 cents per hour of the $1.55 per hour amount they were to contribute to the defined contribution plan because of a deficit in the frozen Plan's Funding Standard account.

The employers made the contributions as directed, but brought this lawsuit, seeking a declaratory judgment that they are not obligated to make the contributions to the

frozen Defined Benefit Plan claiming that any deficit which may exist in the Plan's Funding Standard account was caused by the Trustees' maladministration of the Plan.

## III. DEFENDANT'S MOTION TO DISMISS

The Trustees moved to dismiss the employers' Complaint pursuant to Fed.R.Civ. Pro. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted) arguing that, because "employers" are not among the list of persons empowered to bring a civil action under ERISA enumerated in the pertinent provisions of 29 U.S.C. § 1132(a), Plaintiffs here have no standing to bring the instant lawsuit and therefore have failed to state a claim upon which relief can be granted. Defendant further argued that because the ERISA's explicit jurisdictional provision, 29 U.S.C. § 1132(e)(1), only confers this Court with subject matter jurisdiction over suits brought by specific parties, and because "employers" are not among those specifically listed parties, this Court lacks subject matter jurisdiction over the instant action. Plaintiffs concede that they have no standing to sue the Plan Trustees under ERISA for breach of their fiduciary duties. However, they argue that because the Court would have jurisdiction under ERISA over an action brought by the Defendant Board of Trustees, as plan fiduciaries, to enforce Plaintiffs' contribution obligations, and because, according to Plaintiffs, such a "threatened" action by the Plan Trustees is what underlies Plaintiffs' declaratory judgment Complaint, they contend that this Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## IV. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magistrate Judge Morgan agreed with Plaintiffs and determined that the declaratory defendants' (i.e., the Defendant Trustees') right to sue to enforce the Plan's entitlement to employer contributions under ERISA provides this Court with juris-

diction over this declaratory judgment action:

[A] trustee's action to enforce the provisions of ERISA would be exclusively governed by federal law, i.e., it would "arise under" federal law [ERISA] and the court would have federal question jurisdiction.

Thus, since [the] court would have federal question jurisdiction over the threatened action underlying [Plaintiffs' complaint for] declaratory judgment, that is, over a suit against the employers to enforce the employers' obligations to contribute pursuant to ERISA, the court has jurisdiction over the declaratory judgment action.

Defendant Trustees urge, however, that the action must be dismissed because the employers are not persons who may bring a civil action under ERISA, although admittedly any of them could be sued for failure to make contributions. However, under the *Franchise Tax Board [v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)] analysis, it is the nature of the *threatened* action that determines whether there is jurisdiction over the declaratory judgment action. Since the employers could be sued by the Trustees in federal court for failure to contribute, then it follows that they have the converse right to bring a declaratory judgment action to determine their liability in a matter presenting a[n] actual controversy.

[R & R, pp. 837–38.]

However, Magistrate Judge Morgan went on to explain that, like all declaratory judgment actions, a declaratory judgment suit arising under ERISA is limited by the actual "case or controversy" requirement of Article III of the U.S. Constitution. She determined that no actual case or controversy exists in this case because she found that

[N]either the complaint nor the amended complaints state, with the required specificity, that the employers have been harmed or threatened with harm. They are currently not paying any more mon-

ey than they were before. They have not alleged any facts to support their legal conclusion that an actual controversy exists. Thus, they have not presented an actual controversy in which this court should choose to exercise its discretion to enter a declaratory judgment, when plaintiffs have not alleged an injury, real or threatened.

[R & R, pp. 839–40.]

Based upon her determination that no "actual case or controversy" exists, the Magistrate Judge concluded that Plaintiffs lack standing to bring this action and recommended that the case be dismissed.

## V. PLAINTIFFS' OBJECTIONS TO THE R & R AND DEFENDANT'S RESPONSE

The Plaintiffs' objected only to the above-quoted portion of pp. 839–40 of the Magistrate Judge Morgan's Report and Recommendation in which the Magistrate Judge concluded that no actual case or controversy has been presented. Plaintiffs concede that the Magistrate Judge correctly determined that they are not contributing any more money now to the plans because the $1.55 per hour they are obligated to pay to the defined contribution plan has merely been re-distributed so that they are now paying $1.30 per hour to the defined contribution plan and $.25 to the Defined Benefit Plan. Nonetheless, they claim they have presented an "actual case or controversy" because they face the "threat" of ERISA "withdrawal liability" which could potentially amount to "millions of dollars".[1] Plaintiffs argue that because "withdrawal liability" under ERISA— which only attaches to a defined benefit pension plan and cannot attach under a defined contribution plan—exists regardless of whether or not the employer is liable for current contributions, the fact that their total contribution amount is unchanged is irrelevant.

The gist of their argument is that when the employers and the Union entered into the February 1985 Supplemental Agreement under which they created the new defined contribution plan, the parties first made sure that the Defined Benefit Plan was fully funded. This, according to Plaintiffs, insured them that there would not be any "unfunded vested benefits" in the Plan for which they could be assessed "withdrawal liability" if they ever closed or went out of business. After that Defined Benefit Plan was determined to be fully funded, the parties "froze" that Plan, and determined that henceforth, they would only make contributions to the defined contribution plan, to which type of plan no "withdrawal liability" can attach.

Plaintiffs claim that if Defendant Trustees' actions in unfreezing the Defined Benefit Plan and mandating additional contributions to that Plan by the employers is allowed to stand, until all employer contributions are made, the Defined Benefit Plan will remain partially unfunded, and, thus, they will continue to face the possibility of being assessed "withdrawal liability" if they were to withdraw from the plan while it remained partially unfunded, which was what they contend they wanted to avoid by entering into the February 1985 Supplemental Agreement. It is the "threat" of this potential "withdrawal liability" that Plaintiffs claim establishes an actual case or controversy which they believe the Magistrate Judge must have overlooked in finding that no actual case or controversy exists in this case.

In response to Plaintiffs' Objections, the Defendant Trustees point out that pursuant to 29 U.S.C. § 1381, withdrawal liability can only be assessed if and when an employer withdraws from a multi-employer plan. None of the employers have withdrawn, or are about to withdraw, from the Plan, thus, no withdrawal liability exists in this case at this time. Thus, they argue that Magistrate Judge Morgan's no "actual case or controversy" determination was correct.

---

1. Under the provisions of ERISA, employers who contribute to a multi-employer pension plan are liable to the plan for their allocable share of "unfunded vested benefits" if they ever close or go out of business. This liability is known as "withdrawal liability."

Defendant further points out that if the Court were to grant Plaintiffs the declaratory judgment they request, the employers would not make any contributions to the Defined Benefit Plan, and by not contributing to the Plan, they would actually create the "harm" they seek to avoid—i.e., by not contributing to the Plan they would assure the Plan's deficient funding and thereby guarantee the assessment of withdrawal liability upon their decision to withdraw from the Plan.

## VI. ANALYSIS

### A. PERTINENT STATUTORY PROVISIONS.

Plaintiffs allege in paragraph 19 of their First Amended Complaint that federal subject matter jurisdiction over this action is based on sections 502 and 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, and the Declaratory Judgment Act, 28 U.S.C. § 2201.[2]

The pertinent provisions of the above-referenced ERISA sections, 29 U.S.C. §§ 1132 and 1145, provide in relevant part, as follows:

> **§ 1132. Civil enforcement**
>
> **(a) Persons empowered to bring a civil action**
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> (A) for the relief provided in subsection (c) of this section [i.e., for an ERISA plan's administrator's refusal to supply requested information] or
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary [of Labor], or by a participant, beneficiary, or fiduciary for

appropriate relief under section 1109 of this title [breach of fiduciary duties];

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [furnishing plan participants with a copy of the plan's IRS registration statement];
>
> (5) except as otherwise provided in subsection (b) of this section [pertaining to plans qualified under the Internal Revenue Code], by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
>
> (6) by the Secretary to collect any civil penalty [against plan administrators or fiduciaries] under subsection (c)(2) or (i) or (1) of this section.
>
> \*    \*    \*    \*    \*    \*
>
> **(e) Jurisdiction**
>
> (1) Except for actions under subsection (a)(1)(B) of this section [i.e., actions by a participant or beneficiary to recover benefits due him], the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C. § 1132(a), (e)(1).

29 U.S.C. § 1145 provides:

---

**2.** As Magistrate Judge Morgan noted in footnote 5 at page —— of her Report and Recommendation, the employers have also argued that the Court has subject matter jurisdiction over this matter under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). However, as the Magistrate Judge correctly ob-

served, for jurisdiction to attach under § 301, the plaintiffs must assert a claim of breach of a contract existing between an employer and a union. Plaintiffs here have not alleged a breach of contract claim, nor have they sued the union under any other theory. Thus, there is no basis for § 301 jurisdiction.

## § 1145. Delinquent contributions

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The Declaratory Judgment Act, 28 U.S.C. § 2201 provides, in pertinent part:

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28. U.S.C. § 2201(a).

Plaintiffs contend that 29 U.S.C. §§ 1132(a)(3) and 1145 "confer subject matter jurisdiction on this Court" and that under 28 U.S.C. § 2201, they have "standing" to maintain this action for a declaratory judgment.

B. IN THE ERISA CONTEXT, THE ISSUES OF WHETHER A COURT HAS "JURISDICTION" OVER THE ACTION AND WHETHER A LITIGANT HAS "'STANDING' TO ASSERT A CAUSE OF ACTION" ARE INTERTWINED, BUT PRESENT SEPARATE AND DISTINCT INQUIRIES.

■ It appears to the Court that some confusion has been created in this case from the parties' (and the Magistrate's) use of the terms ERISA "subject matter jurisdiction" and ERISA "standing" interchangeably when addressing the question of whether this action is subject to dismissal for lack of jurisdiction pursuant to Fed. R.Civ.Pro. 12(b)(1) and failure to state a claim under Fed.R.Civ.Pro. 12(b)(6). This is not surprising since numerous courts, when called upon to determine whether an employer has "standing" to maintain a civil ERISA action, have presented the issue as requiring a determination of whether ERISA provides the court with "Jurisdiction" to entertain such suits. *See e.g.*, Annot., "Standing of Employer to Bring Civil Action under § 502 of ERISA (29 USCS § 1132)", 104 ALR Fed. 611 and cases discussed therein.

However, as the Sixth Circuit recently observed in *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991), the questions of subject matter jurisdiction and standing in ERISA cases, although interrelated, are separate and distinct concepts. *See also, Crown Cork & Seal v. Teamsters Pension Fund*, 549 F.Supp. 307 (E.D.Pa.1982), *aff'd*, 720 F.2d 661 (3rd Cir.1983) ("Whether subject matter jurisdiction exists in this [ERISA] case is a separate inquiry from whether a cause of action may properly be asserted [by the plaintiff-employer]." 549 F.Supp. at 309.); *In re Estate of Sheppard*, 658 F.Supp. 729, 735 (C.D.Ill.1987) ("The issue of standing [under ERISA] is analytically distinct from the question of jurisdiction.")

C. THE MAGISTRATE JUDGE DID NOT ADDRESS THE FACT THAT ERISA'S EXPRESS GRANT OF FEDERAL COURT JURISDICTION IN 29 U.S.C. § 1132(e)(1) IS LIMITED TO ACTIONS BROUGHT ONLY BY SPECIFICALLY ENUMERATED PARTIES, AND EMPLOYERS, SUCH AS PLAINTIFFS HERE, ARE NOT AMONG THOSE SPECIFICALLY ENUMERATED PARTIES.

■ As indicated above, Magistrate Judge Morgan recommended that this case be dismissed because she found that Plaintiffs had not presented an actual "case or controversy" so as to endow them with "standing" to bring this action. The Magistrate Judge, noting in footnote 7 at page 839 of her Report and Recommendation, the confusion created by other federal courts' interchangeable use of "standing" and "jurisdiction", concluded that the cases addressing the question of whether the courts in those actions had been granted "subject matter jurisdiction" under 29 U.S.C. § 1132(e)(1), "they appear to be ac-

tually referring to the doctrine of standing." [R & R, p. 839, n. 7, citing, by way of example, *Pressroom Unions—Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).]

The Magistrate Judge's reading of *Pressroom* with respect to this "standing" vs. "subject matter jurisdiction" issue is not accurate. As several courts have observed, the "standing" question in ERISA actions is to be determined with reference to the provisions of 29 U.S.C. § 1132(*a*), which, as indicated above, provides which persons are empowered [i.e., have standing] to bring a civil action. *See, Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 951 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991) ("Only "participants" and "beneficiaries", as those terms are defined under ERISA, have standing to pursue claims for benefits under 29 U.S.C. § 1332(*a*)(1)(B)."). *See also, In re Estate of Sheppard, supra*, 658 F.Supp. at 735 (noting that Subsection (a) of § 1132 sets forth the parties entitled to bring certain types of actions while subsection (e)(1) sets forth the limited scope of the district court's jurisdiction, and that the issue of standing under subsection (a) is analytically distinct from the question of jurisdiction under subsection (e)).

With respect to the *Pressroom* decision, the court in that case first explained:

It is beyond dispute that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judiciary, and that courts are not to infer a grant of jurisdiction absent a clear legislative mandate.

\* \* \* \* \* \*

We focus not on whether the legislative history reveals that Congress intended to *prevent* actions by employers or other parties, but instead whether there is any indication that the legislature intended to *grant* subject matter jurisdiction over suits by employers, funds or other parties not listed in § 1132(e)(1).

700 F.2d at 892 (emphasis in original).

The court then went on to analyze the plaintiff fund's contention that because, § 1132(d)(1) states that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity", it contemplates the existence of a cause of action which a pension fund may assert and, therefore, necessarily implies that federal subject matter jurisdiction would exist for such suits.

The court found no merit in the plaintiff's contention:

There is no doubt that this section [§ 1132(d)(1)] authorizes suits against a fund. The difficulty arises with those portions of the section which authorize a fund to bring an action. The uncertainty generated by this language, however, is troubling only upon first blush. More careful analysis demonstrates the § 1132(d)(1) is not inconsistent with the specific and exclusive grant of subject matter jurisdiction contained in § 1132(e)(1). Subsection (d)(1) only establishes the right of employee benefit plans created by ERISA to sue and be sued like corporations and other legal entities. Without such a provision a pension plan would not be a legally cognizable body. *Affording plans the power to sue does not, however, imply that they may bring actions under ERISA; it merely authorizes suits to be brought by funds in other situations where there would properly be jurisdiction.* For example, if a fund became involved in a contract dispute, and wished to pursue a state law contract claim, § 1132(d)(1) would allow the fund to bring such an action in its own name. *The Fund would have us accept the argument that the carefully drafted provisions extending jurisdiction and standing to pension plan participants, beneficiaries and fiduciaries were incomplete, and that those sections do not foreclose the possibility of actions brought by other parties. In light of the frequent references in the Act and*

its legislative history to "participants, beneficiaries and fiduciaries," this conclusion is untenable. It is more probable that Congress's use of the words "or sue an entity" were not considered in the context of standing or jurisdiction. This interpretation is more plausible than the Fund's view, and as we have noted, resolves the superficial ambiguity between § 1132(d)(1) and the standing and jurisdictional provisions.

*Accordingly, we hold that the district court was without subject matter jurisdiction over the Fund's complaint, and Judge Conner properly dismissed the action.*

700 F.2d at 892–893 (citations omitted and emphasis added).

Thus, it is clear that the Second Circuit did not decide *Pressroom* on "lack of standing" grounds; the case was decided on the basis of lack of subject matter jurisdiction under § 1132(e)(1).

■ Plaintiffs' contention in this case regarding "implied subject matter jurisdiction" under § 1145 of ERISA is very similar to the contention of the plaintiff in *Pressroom* that by virtue of § 1132(d)(1), ERISA subject matter jurisdiction should have been implied. This Court agrees with the analysis and reasoning of the *Pressroom* court—only Congress can grant and extend the subject matter jurisdiction of the federal judiciary, and in enacting ERISA, Congress chose to *limit* that jurisdiction in a very particularly stated provision, § 1132(e). Because Congress has explicitly spoken and limited the scope of ERISA federal subject matter jurisdiction to cases brought by plan participants, beneficiaries, or fiduciaries, or by the Secretary of Labor, this Court, cannot imply or infer a broader scope of jurisdiction to include cases brought by other parties not listed in § 1132(e).

In *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court made clear that the express grant of federal jurisdiction under ERISA is limited to suits brought by the parties listed in § 1132(e). In that case, the plaintiff argued—just as Plaintiffs do in this case—that because the defendant ERISA–plan trustees could have brought a coercive action to enforce the Trust's rights under ERISA, the federal court had subject matter jurisdiction over its declaratory judgment action. The court rejected the plaintiff's argument, explaining:

The question, then, is whether a federal district court could take jurisdiction of appellant's declaratory judgment claim had it been brought under 28 U.S.C. § 2201.... Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question. Section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] specifically grants trustees of ERISA-covered plans like CLVT a cause of action for injunctive relief when their rights and duties under ERISA are at issue, and that action is exclusively governed by federal law. *If CLVT could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA, does a declaratory judgment suit by the State "arise under" federal law?*

*We think not.*

\*     \*     \*     \*     \*     \*

*The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined that a right to enter federal court was necessary to further the statutory purposes. It did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue....* [U]ntil Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts.

103 S.Ct. at 2851–2852 (footnotes omitted

and some emphasis added).[3]

Furthermore, in *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101 (6th Cir.1983), which like this case, was a declaratory judgment action brought by an employer, the Sixth Circuit, consistent with the *Franchise Tax Board* court's ruling of the limited scope of ERISA subject matter jurisdiction, expressly held that "Section 1132(e)(1) does not confer jurisdiction over an action brought by an employer, and section 1132(a)(3) does not confer standing to an employer to seek the remedies provided by that provision." *Id.* at 1103.[4]

Based upon the foregoing discussion, the Court finds that it lacks subject matter jurisdiction over the instant lawsuit, and therefore, Defendant's Motion to Dismiss will be granted on this basis.[5]

**3.** The Court notes that Magistrate Judge relied upon an excerpt from *Franchise Tax Board,* quoted at page 837 of the Report and Recommendation, for the proposition that "under the *Franchise Tax Board* analysis ... since the employers could be sued by the Trustees in federal court for failure to contribute [under § 1145], then it follows that they have the converse right to bring a declaratory judgment action to determine their liability in a matter presenting a[n] actual controversy." [R & R, p. 838.] However, the quoted excerpt from *Franchise Tax Board* at page 837 of the R & R, which the Magistrate Judge suggests presents the Supreme Court's "analysis" of the matter, had nothing to do with the court's ruling in that case. Rather, the quoted excerpt is a *portion of a footnote* explaining the basis of the plaintiff's contention—(which is identical to Plaintiffs' contention in this case)—that it should be permitted to proceed in federal court with its declaratory judgment action because the defendant trustees would be able to sue the plaintiff to enforce the Trust's rights under ERISA pursuant to § 1132(a)(3). In that footnote, the *Franchise Tax Board* court merely explained how federal courts often found jurisdiction to be satisfied in declaratory judgment cases brought by alleged *patent infringers* to declare a patent invalid, on the theory that an infringement suit by the declaratory judgment defendant would raise a federal question over which the federal courts have exclusive jurisdiction.

In light of the fact that the *Franchise Tax Board* court *emphasized* the very limited scope of ERISA's grant of subject matter jurisdiction in § 1132(e)(1) to provide federal courts with subject matter jurisdiction *only* over cases brought by the parties specifically listed in that section, and because the Supreme Court has consistently held that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judiciary, and that courts *are not to infer* a grant of jurisdiction absent a clear legislative mandate, *Rice v. Railroad Co.,* 66 U.S. (1 Black) 358, 17 L.Ed. 147 (1861); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.,* 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981), the Court rejects the Magistrate Judge's Report and Recommendation to the extent that she found an implied grant of ERISA subject-matter jurisdiction for purposes of this declaratory judgment action under 29 U.S.C. § 1145.

**4.** In *Great Lakes Steel,* the plaintiff had argued in the district court that it was bringing its declaratory judgment action in its capacity as an employer and also in its capacity as a plan fiduciary. The district court dismissed the complaint in its entirety reasoning first, with respect to the plaintiff's claim that it was acting in its capacity as an employer, that employers are not listed among the enumerated parties in § 1132(e)(1) and § 1132(a)(3) [i.e., plan participants, beneficiaries, fiduciaries, and the Secretary of Labor]. The district court went on to rule that the roles of employer and fiduciary were inseparable, and therefore, exercised its discretion and dismissed the employer's complaint based upon its asserted status of fiduciary, as well. The Sixth Circuit affirmed the portion of the district court's ruling regarding the lack of subject matter jurisdiction and lack of standing for the plaintiff's "employer *qua* employer" claim, but reversed the district court's discretionary ruling with respect the "employer *qua* fiduciary" capacity claim, because fiduciaries are among the enumerated parties in §§ 1132(a)(3), (e)(1).

**5.** Further, with respect to the Magistrate Judge's recommendation that this case be dismissed because of Plaintiffs lack of standing to bring this action, the Court agrees with the Magistrate Judge's conclusion that Plaintiffs lack standing, but finds that the Plaintiffs lack standing for different reasons that those upon which Magistrate Judge Morgan's conclusion was based.

Magistrate Judge Morgan concluded that the Plaintiffs lack standing because they do not satisfy the "actual case or controversy" prerequisite for standing under Article III of the Constitution. Even assuming *arguendo* that Plaintiffs have, as they argue, presented an "actual case or controversy" to satisfy the standing requirements of Article III of the Constitution, both the Magistrate Judge and the Plaintiffs overlook the fact that Congress, through legislation, may restrict the scope of standing doctrine by choosing not to expand the concept to the full extent allowed by law. *See, In re Estate of Sheppard, supra,* 658 F.Supp. at 736, *citing, Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

## VII. CONCLUSION

For all of the foregoing reasons, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendation is accepted by this Court as corrected and modified in this Opinion and Order.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss this action be, and hereby is, GRANTED. Accordingly, this action will be DISMISSED in its entirety.[6]

Let Judgment be entered accordingly.

The *Sheppard* court determined that it lacked subject matter jurisdiction over the counter-plaintiff/employer's ERISA declaratory judgment counterclaim to determine the validity of its lien upon a plan beneficiary's accident settlement proceeds, and that the counter-plaintiff/employer lacked standing to bring the action because employers are not among the listed parties in 29 U.S.C. §§ 1132(a) and (e).

In addressing the standing issue, as indicated above, the *Sheppard* court observed:

Indeed, Caterpillar [the counter-plaintiff/employer] may satisfy the prerequisite for standing under Article III of the Constitution: a personal stake in the outcome of the controversy warranting invocation of federal-court jurisdiction and justifying exercise of the court's remedial powers on the claimant's behalf. But Congress, through legislation, may restrict the scope of the standing doctrine by choosing not to expand the concept to the full extent allowed by Article III. In drafting ERISA, the lawmakers elected such a course.

The act seeks to protect the interests of participants and beneficiaries in employee benefit plans by way of a carefully drawn regulatory scheme. 29 U.S.C. § 1001. In § 1132, Congress specified the parties and actions necessary to insure that the law's aims were met. And while no doubt the legislature considered employers and administrators to be an intricate part of the plot, it failed to provide them with a cause of action under ERISA. This tribunal is bound by that decision.

Thus, not only does the district court lack subject matter jurisdiction to decide the validity of Caterpillar's lien, but moreover the corporation does not possess the requisite standing to ask it to do so.

658 F.Supp. at 736 (citations and footnote omitted).

## REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

This matter is before the court on the defendant's motion to dismiss and for sanctions for filing the lawsuit. The issue before the court is whether an employer/contributor to an ERISA qualified plan may bring a declaratory judgment action to have the court determine its continuing liability to make contributions to that Plan after it had been "frozen" by agreement with the union and in conjunction with the Trustees of the Plan.

Plaintiffs are corporate employers who, as a result of a collective bargaining agree-

**6.** The Court would note that the Court's determination that it lacks subject matter jurisdiction over this action and that the Plaintiffs lack standing to bring the instant lawsuit does not leave Plaintiffs without a remedy. They are entitled to bring their allegations of misconduct and maladministration on the part of the Plan Trustees to the Secretary of Labor. As the court explained in *Trustees of Boston University v. District 65, United Automobile Workers,* 107 L.R.R.M. 2947, 2 E.B.C. 1097 (D.Mass.1981), a case which involved an employer's contributions to an employee benefit plan and a dispute regarding changes made in the amount of the employer's required contributions to the plan:

The enforcement provision of ERISA, 29 U.S.C. § 1132, provides that civil actions may be brought only by a participant, beneficiary, or fiduciary of a fund, or by the Secretary of Labor. An employer who contributes to employee benefit plans does not fit into any of these categories. Instead, the statutory scheme of ERISA requires an employer to bring its allegations to the Secretary of Labor, who has the broad discretionary powers to investigate and enforce the fiduciary standards of the statute. The Congressional intent in establishing ERISA was to allocate to the employer an administrative remedy only....

\* \* \* \* \* \*

The University [as the employer in this case] also has recourse to an administrative remedy through the Secretary of Labor, whereby its complaints and allegations concerning the management and operation of the 65 Security Plan can be investigated, and if proven, effectively remedied. For this Court to become involved in a detailed examination of various alleged breaches of fiduciary duty by Fund trustees would ... counter the careful statutory scheme.

*See also,* 29 U.S.C. §§ 1134, 1136(b).

ment with the Pattern and Model Makers Association of Warren and Vicinity, AFL-CIO (the union), established and contributed to a defined benefit pension plan under the terms of ERISA. Defendant is the Board of Trustees of that plan. Plaintiffs have filed this action for a declaratory judgment asking the court to determine that they are not liable for making continuing contributions to the plan. Defendant contends that plaintiffs are without standing to bring this action, and therefore the court lacks subject matter jurisdiction. For the reasons discussed in this report, it is recommended that the motion for dismissal be granted but the motion for sanctions be denied.

The facts essential to a determination of this motion are not in dispute. Since 1967, the plaintiff employers and the union have maintained a multi-employer defined benefit pension plan. Until 1985, the collective bargaining agreements did not specify the amount of the pension benefits under the plan. Instead, they specified the amount which each employer was obligated to contribute and granted to the trustees the power to determine the levels of benefits in accordance with sound actuarial principles. Nevertheless, the plan was a "defined benefit" plan under applicable federal laws.[1]

In December 1984, the union and the employers reached an agreement as a result of the collective bargaining process to increase the benefits under the defined benefit plan, to fund such substantially increased benefits by purchase of a "dedicated portfolio" of bonds, and then to "freeze" this plan, with no further accrual of benefits and no further employer contributions.[2] At the same time, the union and the employers agreed to establish a new plan, a defined contribution plan, to which the employers would contribute instead. The initial contribution to the new plan was 80 cents per hour (increasing to 90 cents per hour effective March 6, 1985) for each covered individual.

As part of this change, the union and employers executed a Supplemental Agreement which became effective February 1, 1985. (Appendix C to the Complaint). The Supplemental Agreement was drafted with the assistance of the attorneys for the Trustees of the Plan. That agreement states in pertinent part as follows:

> [T]he trustees of said plan shall take such steps as may be necessary to immediately vest the accrued interests of all active participants under the plan, with such benefit improvements as the actuary for the plan shall determine to be feasible by applying existing assets of the plan to purchase a dedicated bond portfolio. Benefit improvements which shall be considered by the Trustees in implementing this provision shall include all of the benefit and plan design improvements proposed to the membership and approved by them on December 18, 1984, a copy of which is attached hereto and incorporated herein by reference. There shall be no further accruals of credited service under the plan nor improvement in benefits without the agreement of the Union and Employer. The Trust Agreement shall be amended to include this limitation and, also, a limitation on operating expenses which may be incurred without the agreement of the union and the employer of not to exceed the amount of projected expenses estimated by the actuary in establishing the cash flow projection for the dedicated bond portfolio under which the plan is to be funded. The employer shall be responsible for all net charges to the plan's

---

1. "Defined benefit" and "defined contribution" are terms of art under the Employee Retirement and Income Security Act (ERISA) 29 U.S.C. § 1002(34) and (35). A defined benefit plan means a pension plan other than an individual account plan (§ 1002(35)). A defined contribution plan, also called an individual account plan, "means a pension plan which provides for an individual account for each participant and benefits based solely on the amount contributed...." 29 U.S.C. § 1002(34).

2. There is no evidence on this record to show that the plan was ever terminated or that any of the employers withdrew from the plan. The Multi-employer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1453 imposes withdrawal liability on an employer who ceases participation in a multi-employer pension plan and establishes procedures, centering on arbitration, for resolving disputes over the amount of withdrawal liability.

Funding Standard Account.... If it becomes necessary, in the opinion of the plan's actuary, for the Employer to resume contributions to the defined benefit plan, the amount of the Employer's contribution to the defined contribution plan under paragraph 2 below shall be correspondingly reduced by the amount of such contribution.

Supplemental Agreement, Paragraph 1.

It is not disputed that Wyatt Company, the actuary for the Plan, advised the Trustees that the purchase of the dedicated bond portfolio would cause the Plan to remain fully funded in perpetuity, provided that the plan was amended to be essentially the plan described by the actuary.

From February, 1985, until May, 1991, the employers made no further contributions to the frozen plan. Instead, the employers made contributions as agreed, to the new defined contribution plan. The amounts increased through contract negotiations from 90 cents per hour as of March, 1985, to $1.55 per hour by April, 1991. In May, 1991, the Trustees of the Plan told the employers that they would have to contribute 25 cents per hour to the frozen defined benefit plan, instead of contributing the total amount to the defined contribution plan, and stating that such contribution would be required for the next ten years because of a deficit in the frozen plan's Funding Standard account.

The employers made the contributions as directed, but brought this lawsuit,[3] seeking a declaratory judgment that they are not obligated to make such contributions because any deficit which may exist in the Funding Standard account of the frozen defined benefit plan has been caused by unauthorized amendments to the Plan by the trustees, by granting improvements in benefits in excess of those determined to be feasible by the actuary for the plan, by

excessive administration expenses charged to the plan by the trustees, and by other acts of maladministration by the trustees, in violation of the express restrictions contained in the Supplemental Agreement and in violation of the Trustees' fiduciary duties under 29 U.S.C. § 1104. (Complaint, ¶ 17) The plaintiffs allege that an actual controversy exists. (Complaint, ¶ 20)

The defendant Trustees argue that the court must dismiss this action because the employers are not one of the persons or entities allowed to bring suit under ERISA, and therefore, the court lacks subject matter jurisdiction. The employers argue that the court has jurisdiction under 29 U.S.C. § 1132 and § 1145, and that a declaratory judgment action is proper under 28 U.S.C. § 2201.[4]

Section 1145 provides in pertinent part:

*Delinquent contributions:* Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Section 1132(a)(3) provides that:

*Persons empowered to bring a civil action:*

A civil action may be brought ...

(3) by a participant, beneficiary, or fiduciary

  (a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

  (b) to obtain other appropriate equitable relief

    (i) to redress such violations, or

---

**3.** Shortly after this lawsuit was filed, a similar action, *Corbin v. Blankenburg,* Civil Action No. 91–CV–72595–DT, assigned to Judge Woods, was also filed. A request for a transfer pursuant to Local Rule 8(c) was allegedly noted on the cover sheet of the instant case. No such transfer has yet occurred, but it would seem that transfer should be had under the local rules.

**4.** Initially, plaintiffs deny that this is an action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2), and concede that they would not have standing to bring such a claim. This is, in fact, the cause of action asserted in the presently pending Civil Action No. 91–CV–72595–DT against the individual trustees.

(ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132.

The declaratory judgment statute, 28 U.S.C. § 2201 provides:

(a) In a case of actual controversy with its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

It is well settled, however, that § 2201 does not ipso facto provide a basis for federal jurisdiction. *Michigan Savings and Loan League v. Francis*, 683 F.2d 957, 960, n. 7 (6th Cir.1982), discussing federal declaratory judgment in context of a state court action, and citing *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The court must look to the nature of the threatened action to see if federal jurisdiction exists.

A federal district court has jurisdiction over any cause of action that "arises under" federal law. In determining whether a cause of action arises under federal law, courts have often quoted the statement in *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), that the court must look to the complaint as it was filed. Cf., *Cromwell et. al. v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991) (discussing the doctrine of standing in the context of ERISA removal jurisdiction). "That a complaint ultimately fails to state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction." *Cromwell, supra* at 1277, citing *Bush v. State Industries, Inc.*, 599 F.2d 780 (6th Cir.1979).

Here, the threatened action is the trustees' claim to enforce the employers obligation under § 1145 of ERISA. The trustees would have a right to bring such action under § 1132 as fiduciaries, one of the specifically enumerated plaintiffs in the section, and would have the right to bring this action in this court.

The Supreme Court discussed jurisdiction in the context of an action for declaratory judgment in *Public Service Comm. v. Wycoff Co., Inc.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Court observed:

"Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is a federal question jurisdiction .... If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim."

*Id.* at 248, 73 S.Ct. at 242.

However, where there is no issue of diversity and the threatened action would itself present federal question jurisdiction, the scope of the application of *Skelly Oil, supra,* is less clear. Justice Brennan, writing for a unanimous court in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), noted that federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question. *Id.*, 463 U.S. at 16, 103 S.Ct. at 2851.

"Taking jurisdiction over this type of suit is consistent with the dictum in *Public Service Comm. of Utah v. Wycoff Co., [supra]*, in which we stated only that a declaratory judgment plaintiff could not get original federal question jurisdiction if the anticipated lawsuit by the declaratory judgment would *not* 'arise under' federal law. It is also consistent with the nature of the declaratory remedy itself, which was designed to permit adjudication of either party's claims of right.

See, E. Borchard Declaratory Judgments, 15–18, 23–25 (1934)."

*Id.* at 2851, note 19.

The Court then discussed how a trustee's action to enforce the provisions of ERISA would be exclusively governed by federal law, i.e., it would "arise under" federal law and the court would have federal question jurisdiction. *Id.*

Thus, since court would have federal question jurisdiction over the threatened action underlying the declaratory judgment, that is, over a suit against the employers to enforce the employers' obligations to contribute pursuant to ERISA, the court has jurisdiction over the declaratory judgment action.[5]

Defendant Trustees urge, however, that the action must be dismissed because the employers are not persons who may bring a civil action under ERISA, although admittedly any of them could be sued for failure to make contributions. However, under the *Franchise Tax Board* analysis, it is the nature of the *threatened* action that determines whether there is jurisdiction over the declaratory judgment action. Since the employers could be sued by the Trustees in federal court for failure to contribute, then it follows that they have the converse right to bring a declaratory judgment action to determine their liability in a matter presenting a actual controversy.[6]

A review of the decisions of circuit and district courts in this area is not helpful in discerning a clear line of well reasoned authority. Some courts have failed to consider the nature of a declaratory judgment action and have not looked to the nature of

the threatened action to determine jurisdiction.

In *Teagardner v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947 (6th Cir. 1990), this circuit held former employees could not sue to recover proportionate shares of certain residual assets of the plan. The court stated that only "participants" or "beneficiaries" of an employee benefit plan have standing to sue. However, that case did not deal with a declaratory judgment action.

Similar statements were made by the District of Columbia Circuit Court in *Grand Union Company v. Food Employers Labor Relations Association et. al.,* 808 F.2d 66, 71 (D.C.Cir.1987), a declaratory judgment action where the underlying action was withdrawal liability in a multiemployer plan. Withdrawal liability involves first a duty to arbitrate. Thus, the federal courts would not have had original federal question jurisdiction over the underlying threatened action. Such action to enforce withdrawal liability would have been before an arbitrator.

Confusion is also evident in cases involving the employer's right to bring a counter claim. See, *Giardono v. Jones,* 867 F.2d 409 (7th Cir.1989) (collecting cases).

However, here, it is not the employers' standing to *bring* suit which grants this court jurisdiction over the declaratory judgment action, but the declaratory defendants' right to sue to enforce its right to contributions under ERISA. This right clearly belongs to the trustees.

The widely held majority view is that the list of persons entitled to bring suit under

---

5. The employers have also argued that the court has jurisdiction under § 301(a) of the LMRA, 29 U.S.C. § 185(a). For jurisdiction to attach under § 301, the plaintiff must assert a violation of a contract existing between an employer and a union. The union has not been sued by the employers, and thus, there is no basis for § 301 jurisdiction.

6. There is a great deal of confusion within the circuits regarding the proper procedure to use in evaluating jurisdiction when the lack of jurisdiction is related to lack of standing to sue. See, *Cromwell, et. al. v. Equicor–Equitable,* 944 F.2d 1272 (6th Cir.1991), and *Gould, Inc. v.*

*Pechiney Ugine Kuhlmann,* 853 F.2d 445 (6th Cir.1988). "In the absence of statutory direction, the district court has considerable discretion in devising the procedure to inquire into the existence of jurisdiction." *Land v. Dollar,* 330 U.S. 731, 735 and n. 4, 67 S.Ct. 1009, 1017 and n. 4, 91 L.Ed. 1209 (1947), cited with approval in *Gould.* However, it is clear that a motion under FRCP Rule 12(b)(1) questioning subject matter jurisdiction, must be considered before other challenges since the court must find jurisdiction before determining the validity of a claim. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Gould,* at 450.

the ERISA provisions set forth in § 1132 is exclusive. The only authority for the opposite position is the often criticized Ninth Circuit's decision in *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982).[7]

The courts are without the power to expand their jurisdiction under ERISA in order to imply a cause of action for non-enumerated parties. *Giardono, supra* at 413. That does not mean, however, that where the court would have jurisdiction, that the threatened party may not bring a declaratory judgment action, if there is a case or controversy.

The employers clam that an actual controversy exists. (Amended Complaint, ¶ 20) ERISA's grant of jurisdiction to the federal courts to her disputes regarding pension plans, 29 U.S.C. § 1132(e)(1), is limited by the "case or controversy" requirement of Article III of the United States Constitution. Federal courts are confined to adjudicating actual cases and controversies. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The standards by which cases and controversies are distinguished from premature claims or ones insufficiently adverse are not susceptible of easy application to a particular case. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality...." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

The complaint must allege a substantial degree of specificity in a declaratory judgment action. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Federal judicial power is to be exercised where the complaint alleges that plaintiff is "immediately harmed, or immediately threatened with harm, by the challenged action." *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). Here, neither the complaint nor the amended complaints state, with the required specificity, that the employers have been harmed or threatened with harm. They are currently not paying any more money than they were before. They have not alleged any facts to support their legal conclusion that an actual controversy exists.[8] Thus, they have not presented an actual controversy in which this court should choose to exercise its discretion to enter a declaratory judgment, when plaintiffs have not alleged an injury, real or threatened.

Accordingly, it is recommended that the defendant's motion to dismiss be granted on the grounds that although the court has federal question jurisdiction over the threatened action against the employer under 29 U.S.C. § 1145, no case or controversy has been alleged by the employer, and the court should decline to enter a declaratory judgment. However, since the issue was one of first impression and there is absolutely *no* showing of bad faith or groundless claims, the motion for Rule 11 sanctions should be denied.

The parties are hereby informed that objections may be filed to this Report and Recommendation within ten days after being served with a copy thereof as provided for in 28 U.S.C. § 636(b)(1)(C) and Local Rule C–4 and that failure to file objections may constitute a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). See also,

---

**7.** Throughout the opinions in these cases, the term "jurisdiction" is used in more than one manner. Although often courts discuss the ability of a plaintiff to bring suit under 29 U.S.C. § 1132 in terms of a grant of "subject matter jurisdiction", see, e.g., *Pressroom Unions Etc. Fund v. Continental Assur. Co.,* 700 F.2d 889, 892 (2d Cir.1983), they appear to be actually referring to the doctrine of standing.

**8.** At oral argument the attorney for the employers represented that they were paying under the contract. However, in their motion to dismiss, the Trustees claim that the employers have failed and refused to make the required contributions. If that is true, the trustees must lose as an actual controversy would exist. However, there is nothing in the record to suggest that it is.

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: Sept. 30, 1991.